IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WESLEY DAVIS**, | : | **CASE NO. 1:20-cv-2137** |
| On behalf of himself and others | : | |
| Similarly situated, | : | **JUDGE JAMES S. GWIN** |
| | : | |
| Plaintiffs, | : | |
| | : | **MAGISTRATE JUDGE DAVID** |
| | : | **A. RUIZ** |
| | : | |
| v. | : | |
| | : | |
| **KOWALSKI HEAT TREATING CO.**, | : | |
| | : | |
| Defendant. | : | |

---

**JOINT MOTION FOR FLSA SETTLEMENT APPROVAL PURSUANT TO 29 U.S.C. § 216(b)**

---

Plaintiff Wesley Davis ("Plaintiff") on behalf of the opt-in Plaintiffs (collectively "Plaintiffs"), and Defendant Kowalski Heat Treating Co., ("Defendant"), move for an Entry of an Order approving the settlement agreement between Plaintiff and Defendant in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. (Exhibit 1- Settlement Agreement and Release ("Settlement Agreement") filed in this case.

**STATEMENT OF FACTS AND PROCEEDINGS**

I.      **Summary of the Nature of the Case**

This is a conditionally certified collective action alleged unpaid overtime dispute alleging the Defendant failed to pay overtime related to pre-shift work, lunch break work and incentive bonus compensation for salt bath division workers.

As a result, Plaintiff alleges that Defendant failed to pay all required overtime wages and as a result owes back pay, damages, and interest under the Fair Labor Standards Act ("FLSA") and, also owes back pay, damages, and/or interest under the Ohio Minimum Fair Wage Standards Act.[1]

Plaintiff filed his Complaint against Defendant on behalf of himself and all other current or former hourly production employees on September 22, 2020. Defendant disputes Plaintiff's allegations and denies that Defendant's pay practices violate any laws.

Upon Plaintiff's motion for conditional certification, this Court conditionally certified an FLSA collective of all current and former hourly, non-exempt production employees in Defendant's salt bath division who worked 40 or more hours in any workweek and had one or more of the following occur: (1) the application of Defendant's meal deduction; (2) the performance of pre-shift work; and/or (3) they earned a production bonus, during the three years preceding the filing of this Motion and continuing through the final disposition of this case ("Potential Opt-In Plaintiffs"). Five (5) individuals returned signed consent forms to join this action as an Opt-In Plaintiff, namely, Galen Bizzell, Damaris Cloud, Jacob Kilgore, Anthony Richmond, and Courtney Burrell ("Opt-In Plaintiffs").

Parties agreed to participate in Court Mediation before Magistrate Judge David A. Ruiz. On July 26, 2021, the parties participated in a Zoom video conference mediation with Magistrate

---

[1] Plaintiff's Complaint included Rule 23 Ohio class claims, Defendant argued that a concurrent FLSA collective action and Ohio Minimum Fair Wage Standards Act Rule 23 claim would violate the federal Rules Enabling Act.

Judge Ruiz and the parties reached agreement and settlement agreement memorialized by the signed Settlement Agreement.

Plaintiff Davis negotiated this settlement on behalf of the Opt-In Plaintiffs pursuant to the express grant of authority that each Opt-in Plaintiff provided during and as a result of the Notice process. The Court-approved Notice (ECF. No. 19) informed the putative opt-ins that by submitting a signed Consent for filing in this action, they were agreeing to be represented by named Plaintiff as their representative and by Plaintiffs' counsel as their attorneys and would therefore be bound by the named Plaintiff's decisions made on their behalf (including settlement) and any result whether favorable or unfavorable. *Id.* The Consent form that each of the Opt-in Plaintiffs signed in this case also conferred representative authority on the named Plaintiff to negotiate settlement on behalf of the Opt-in Plaintiffs (ECF. No. 19).

## II. Summary of the Settlement

This case involves the settlement of collective opt-in FLSA and Ohio state wage law claims. Under Sixth Circuit law, Plaintiffs opted-in not only to the FLSA collective action claims, but also to the Ohio supplemental state law claim pled in the Complaint as to opt-ins who performed work within the State of Ohio without receiving Ohio-required overtime compensation and all other benefits and payments required by Ohio's wage and hour laws. *See Barnett v. E-Waste Sys.*, No. 1:14-cv-908, 2015 U.S. Dist. LEXIS 50997, at *6-7 (S.D. Ohio Apr. 17, 2015) (citing *O'Brien*, 575 F.3d at 580) ("an opt-in employee with FLSA and supplemental claims can have both of those claims certified as part of a collective action where a lead plaintiff has FLSA and supplemental claims."). In *O'Brien*, the Sixth Circuit recognized that plaintiffs should be permitted to use the notice and opt in procedure of the FLSA for their companion state law claims. Thus, "an opt-in employee with FLSA and supplemental [state law] claims can have both of those

claims certified as part of a collective action where a lead plaintiff has FLSA and supplemental [state law] claims." *O'Brien*, 575 F.3d at 580; *accord Yerby v. Mike's Tire, Brake & Muffler, Inc.*, No. 4:12-cv-19, 2013 U.S. Dist. LEXIS 193141, at *6 (E.D. Tenn. May 22, 2013). Thus, the Opt-In Plaintiffs who worked for Defendant in Ohio have joined and asserted the supplemental Ohio state law claim by opting into the litigation, and Rule 23 certification is not required for them to have asserted supplemental state law claims under *O'Brien*.

Under the settlement, Defendant agreed to a collective, non-reversionary settlement under which Defendant agrees to entry of a Consent Judgment attached hereto as Exhibit 1 in the amount of Thirty-Nine Thousand Dollars ($39,000.00) in exchange for release to FLSA and state law claims pled or that could have been pled by Plaintiff. In addition to (not by deduction from) the Settlement Amount, Defendant agreed to pay the employer's share of payroll taxes owed on the wages portion of the settlement payments, further increasing the settlement's monetary value beyond the figures stated in the Settlement Agreement. *Id.*

The total settlement will be paid as set forth in the Settlement Agreement. (Exhibit 1, ¶ 1). If Defendant fails to timely comply in full with the payment plan without curing default after required notice and the Consent Judgment is then entered, the Consent Judgment amount will be allocated and paid as set forth in the Settlement Agreement.

The settlement, if approved as submitted, provides for a net sum value to be paid to the Plaintiff and the Opt-In Plaintiffs (collectively the "Plaintiffs") allocated on a pro rata basis according to each Plaintiff's total weeks worked over 40 as a salt bath division worker paid as an

hourly worker within the applicable FLSA limitations period on their individual claims during the covered weeks.[2]

One-half of the settlement payments to the Plaintiffs constitutes payment for settlement of their wage claims reported by IRS Form W-2 (and therefore are subject to standard deductions and withholdings), and one-half constitutes payment of non-wages for settlement of their liquidated damages and interest claims reported by IRS Form 1099. (Exhibit 1, ¶ 1 (d) (2)).

The settlement allocation provides for a service payment of Two Thousand Five Hundred and 00/100 dollars ($2,500) to the named Plaintiff for his service to the collective group of opt-ins that ultimately resulted in their recovery from this settlement, contingent on Court approval. Ex. 1(a). If the Court approves that service payment, then contingent on that approval the named Plaintiff (and only the named Plaintiff) gives Defendant a general release of all claims in exchange for the Court-approved service payments. *Id.*

Defendant agreed to pay, Plaintiff's counsel agreed to accept, and the Parties agreed to allocate in the Settlement Agreement, one-third of the total settlement amount as payment for Plaintiffs' attorney's fees of Thirteen Thousand Dollars ($13,000.00), and an additional amount of Four Hundred Twenty-Eight Dollars ($428.00) as reimbursement to Plaintiffs' counsel for advanced litigation costs and expenses. *Id.*

Finally, the Settlement Agreement provides for entry of stipulated dismissal of the Lawsuit to be entered upon notification to the Court that Defendant timely completed the payment plan without uncured default, or entry of the Consent Judgment if that does not occur; however,

---

[2] The statute of limitations if Plaintiffs were able to carry their burden of proving a "willful" violation would extend to three years preceding their consent filing dates, which period would (for all Plaintiffs) exceed the two-year statute of limitations period applicable to the Ohio wage law claims.

the parties request that the Court retain jurisdiction over any disputes that may arise under this Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the Parties' negotiated Consent Judgment described above, as the Court may deem necessary or advisable. (Exhibit 1, ¶ 2)

## ARGUMENT AND CITATION OF AUTHORITIES

### I. The Settlement Is a Reasonable Compromise of Disputed FLSA Claims.

When parties bring a proposed settlement of an FLSA claim for court approval, that court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *See, e.g., Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 U.S. Dist. LEXIS 135987, at *2 (S.D. Ohio Aug. 13, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-53 (11th Cir. 1982)). A settlement of FLSA litigation "is valid only if the district court enter[s] a 'stipulated judgment' approving it. *Lynn's Food*, 679 F.2d at 1352-54." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013). If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food,* at 1354.

Although not required for settlement of a FLSA opt-in collective action, courts in this district often consider the analogous (though more strenuous) factors governing a reasonableness inquiry for Rule 23 class actions. *See, e.g., Hamm v. S. Ohio Med. Ctr.*, No. 1:16-cv-935, 2017 U.S. Dist. LEXIS 189838, at *4 (S.D. Ohio Nov. 16, 2017) (applying the Sixth Circuit's Rule 23 reasonableness factors in determining whether a FLSA settlement is fair and reasonable, as follows: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5)

the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement) (citing *Int'l Union, United Auto, Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). The Court may choose to consider only those factors it considers relevant to the settlement at hand, and often, "inquiry into one factor necessarily overlaps with inquiry into another." *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002). The Court is not required to determine if the settlement is the fairest possible resolution of the claims of each plaintiff, but rather whether the settlement taken as a whole is fair, adequate, and reasonable. *UAW v. General Motors Corp.*, 2006 U.S. Dist. LEXIS 14890, 2006 WL 89115 at *15 (E.D. Mich. March 31, 2006), *aff'd* 497 F.3d 615 (6th Cir. 2007).

### A. There is no Evidence of Fraud or Collusion, and the Agreement Reflects the Complexity of the Dispute and Potential Risks of Litigation.

The circumstances present in the instant action justify the Court's approval of the Parties' settlement to resolve and release Plaintiffs' FLSA and individual Ohio wage claims against Defendant, including, but not limited to, (1) Defendant's contention that Plaintiffs were properly paid for all hours worked; (2) the Parties' dispute as to whether Plaintiffs' claims would survive a decertification motion under the FLSA; (3) the Parties' dispute as to the number of hours worked by Plaintiffs in overtime workweeks; and (4) Defendant's belief that any potential damages are not ascertainable without an individualized inquiry regarding every individual class member. Therefore, there is a *bona fide* dispute between the Parties, and the settlement should be approved as reasonable in light of the "'real risk of complete non-recovery' if the action were to proceed to trial." *Indirect Purchaser v. Arctic Glacier, Inc. (In re Packaged Ice Antitrust Litig.)*, No. 17-2137, 2018 U.S. App. LEXIS 13882, at *14 (6th Cir. May 24, 2018).

Nonetheless, the Parties have considered the relative strengths and weaknesses of their claims and defenses, the uncertainties and risks inherent in continued litigation, and the benefits of settlement. Accordingly, the Parties participated in a mediation with Magistrate Judge David A. Ruiz on July 27, 2021. It is therefore submitted that the proposed settlement was not the product of collusion and that the facts and legal issues involved are sufficiently complex and disputed such that resolution at this stage is in the interest of all Parties. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *6 (N.D. Ohio Mar. 26, 2019) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator and the negotiations that followed with the mediator's involvement.")

### B. Counsel Agrees that the Financial Terms of the Settlement Reflect a Fair and Reasonable Compromise of Plaintiffs' Wage Claims.

Pursuant to the terms of the Settlement Agreement, which are described in Exhibit 1, if approved, Defendant will pay Plaintiffs a total sum from which all Court-approved attorney's fees and costs, and service awards will be paid, and against which net amount remaining after those payments ("Net Fund Value") the individual plaintiffs will receive their settlement shares.

As further evidence of the reasonableness of this settlement and the absence of any collusion, this is not a settlement where Plaintiff agreed to bind collective action members to a global release of all claims of any kind in exchange for payment. Plaintiffs negotiated release terms that are tailored to release wage claims related to the facts and all claims against Defendant. Plaintiff also negotiated for the benefit of any member of the collective who participates in the settlement a limited release by Defendant of any potential claims against them arising out of their participation in the litigation or the settlement, including Defendant's waiver of any recoupment or offset type claims, providing an additional benefit increasing the value of this settlement.

Finally, to avoid unintended consequences, Plaintiff negotiated an agreement that the parties explicitly agree to no collateral estoppel, claim splitting, res judicata, waiver, or other claim preclusion effect as to claims not explicitly released that may otherwise have resulted from participation in this litigation and settlement.

Thus, Plaintiffs submit, and Plaintiffs' undersigned counsel agrees that the settlement payments and terms constitute a fair and reasonable resolution of Plaintiffs' wage claims. *See, e.g., Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 U.S. Dist. LEXIS 164152, at *17 (S.D. Ohio Sep. 25, 2018) (courts may defer to the judgment of counsel and give great weight to the opinion of experienced counsel that the settlement is in the best interest of the participants) (compiling cases).

### C. The Court Should Approve the Service Payment and Plaintiffs' Counsel's Fees and Costs Payment Amounts As Reasonable Under the Circumstances.

#### 1. <u>Service Payments to Named Plaintiff.</u>

Service payments to the named plaintiff in unpaid wage cases are not uncommon, and "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. [Cit.]" *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Courts in this district routinely approve service payments to named plaintiffs. *See, e.g., Barnes*, 2019 U.S. Dist. LEXIS 65657, at * 18 (approving a $7,500.00 service payment for named Plaintiff); *Osman v. Grube*, Inc., No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (N.D. Ohio May 4, 2018) (approving a $7,500.00 service payment for named Plaintiff). As compensation for his work on behalf of the collective ultimately resulting in this settlement, and in exchange for providing a general release of claims conditioned upon Court approval of the

service payment, the named Plaintiff will receive a service payment in line with service payments approved in similar unpaid wage cases in this district.

It is noted between the parties, if not for the efforts of the named Plaintiff in working with counsel to investigate the lawsuit, prepare and file the Complaint asserting claims on behalf of the putative collective action members who worked in their positions, and assist with negotiations and mediation, this result would not have been achieved for the collective.

### 1. **The Agreed-Upon Payment of Attorney's Fees is Reasonable.**

Under 29 U.S.C. § 216(b), an award of payment of Plaintiffs' attorney's fees and advanced costs is mandatory for prevailing plaintiffs in FLSA cases. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). Plaintiffs achieve "prevailing party" status by obtaining a settlement of FLSA claims approved by Court order or entry of stipulated judgment. *See, e.g., Wolff v. Royal Am. Mgmt.*, 545 F. App'x 791, 793 (11th Cir. 2013) (FLSA plaintiff is a prevailing party upon obtaining a settlement enforced by court approval order or judgment as the functional equivalent of a "consent decree") (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 603-604 (2001)); *Mandour v. Newman Tech., Inc.*, No. 1:13 CV 1222, 2014 U.S. Dist. LEXIS 89364, at *3 (N.D. Ohio June 30, 2014) (plaintiff obtaining court-approved settlement of FLSA claims is deemed a "prevailing party" for purposes of the FLSA's mandatory attorney's fees provision).

Here, Plaintiffs stand to recover a favorable settlement payment[3], and Plaintiffs' counsel's requested fees are reasonable and justified.

The percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money, and each class member is entitled to a share." *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010). As the court noted in *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *6-7 (N.D. Ohio May 4, 2018), fees at one-third of the common fund approved by the percentage-of-the-fund method constitute the reasonable and customary fee in this district for this case:

> Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs. *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). One-third of the common fund is a reasonable attorneys' fee award "and has been approved in similar FLSA collective actions in this judicial district." 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *8 (citing *Dillworth v. Case Farms Processing, Inc.*, 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); [*7] *Fincham v. Nestle Prepared Foods Co.*, 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.*, Case No. 1:07-CV-1110 (N.D. Ohio 2007)).

The agreed-upon amount of attorney's fees and costs to be paid from the total settlement fund is reasonable under the circumstances. First, the results justify the fees. Every plaintiff will receive a fair settlement distribution directly tied to their number of weeks worked over 40 hours

---

[3] And the benefits from Plaintiffs' counsel's efforts are not limited to monetary relief in the form of settlement payments to the Plaintiffs. Through counsel's work on this case resulting in this settlement, Defendant changed its pay policies and practices to include the drop bonus into the regular rate of pay calculation so that all current employees now receive the proper overtime pay when working over forty hours in a workweek. The value of this additional non-monetary relief in the form of programmatic change should also be considered in the benefits to the class analysis.

and named Plaintiff will receive an additional amount for his service to the collective. Second, the risk justifies the fees. Plaintiffs' counsel took on this case with no assurance of payment, no way of knowing if the case would be certified as a collective action (and survive a decertification motion) or how many people would join if the case were certified, no way of knowing whether the court would dismiss the claims on summary judgment or the jury would rule in favor of Defendant, and, therefore, no guarantee of the potential value of the case or how long the case might have to be litigated before payment came (if it came at all). Third, necessity justifies the fees. It is unlikely that any one of the Plaintiffs could reasonably afford to pay for lawyers by the hour to prosecute their FLSA claims. A contingent fee agreement was the most reasonable means by which they could secure representation by attorneys having Plaintiffs' counsel's experience, expertise, and abilities – and the Court can easily determine that this settlement could not have been accomplished at this stage, and on these favorable terms under these circumstances, if Plaintiffs had not been represented by counsel having a high level of experience, expertise and ability. Fourth, that contingency fee representation of plaintiffs in FLSA wage and hour litigation is the standard in this legal market further supports the fee. Plaintiffs' counsel specialize in employee-side employment work and, as courts have routinely acknowledged, their one-third contingent fee is standard in the legal market for employee-side representation in wage and hour litigation. Fifth, the work justifies the fee requested. Plaintiffs' counsel invested substantial time and effort in the case, all without any assurance of payment.

It is therefore respectfully submitted that Plaintiffs' counsel fees as reflected in the Parties' compromise, paid as a percentage of the common fund, to wit, One-Third, should be approved as reasonable.

    a. **<u>Litigation of this Dispute Will be Complex, Involving Substantial Time and Expense for all Parties.</u>**

This litigation would necessarily involve substantial time and expense given the voluminous written discovery, calculations, depositions, and motions practice required to continue litigation. To continue through trial would expose the Parties to substantial risk. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 480 (E.D. Cal. 2010). The proposed settlement, however, provides prompt relief to Plaintiffs while conserving valuable judicial and litigant resources. Plaintiff's work (and Plaintiff's counsel's expertise) allowed for an early resolution prior to extensive discovery, providing additional value to the collective. *See, e.g., Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *21 (S.D. Ohio June 30, 2017) ("this litigation is in the early stages, no formal discovery had been conducted, and no dispositive motions had been filed. Had the parties engaged in formal discovery and filed dispositive motions, this would have increased the cost significantly.").

### b. The Parties Exchanged Information, Participated in Arm's Length Negotiations, and Came to a Mutually Agreeable Resolution.

This case was settled after the exchange of time and pay records during discovery. Defendant produced to Plaintiffs substantial information and through discovery. The Parties then engaged in settlement negotiations, including attending a magistrate-managed mediation session, before finally reaching a mutual agreement.

### c. Settlement of Plaintiffs' claims is appropriate at this stage of litigation.

This case has been conditionally certified as a collective action. Plaintiff claims that he and others similarly situated were denied overtime wages as required by the FLSA and Ohio wage laws. Plaintiff believes the probability of success is high on the asserted wage claims. Defendant strenuously dispute Plaintiff's probability of success. However, the Parties agree that the full value of the wage claims and costs of continued litigation render this case appropriate for resolution at this stage.

d. **<u>The Settlement Agreement Serves the Interest of all Involved.</u>**

The Parties, through their attorneys, voluntarily agreed to the terms of the settlement during arm's length, good-faith negotiations facilitated by a neutral mediator. All Parties were counseled and represented by their respective attorneys throughout the litigation and the settlement process. The Parties negotiated an agreement as to the Plaintiffs' recovery that was at all times based on a contingency percentage amount of fees, such that each dollar Plaintiff was able to obtain in settlement increased the payment amounts to Plaintiffs and counsel in direct correlation such that their interests were aligned. It is therefore the opinion of class counsel and the named plaintiff representative that the settlement reached is a fair compromise of genuinely disputed claims, and it is respectfully submitted that resolution of this matter as proposed serves the best interests of both the Parties to this matter and the public. *See U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting Sen. Rep. No. 884 (75th Conf., 1st Sess.) (the purpose and intent of Congress in enacting the FLSA was "to raise substandard wages and to give additional compensation for overtime work . . . thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'"). The FLSA is a remedial statute designed to protect the wages of workers, *see A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945), and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011).

2. **<u>Payment of Counsel's Advanced and Incurred Costs and Expenses is Reasonable</u>**

Under the common fund doctrine, Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *Brandenburg,* 2019 U.S. Dist. LEXIS 204371, * at 20 (*citing In re*

*Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003)). Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.*

## CONCLUSION

For the reasons set forth above, the parties respectfully request that this Court enter the attached proposed Order (Exhibit 2) approving the settlement in all respects as set forth in the Settlement Agreement and incorporating its terms, administratively closing the case during the payment plan period with the Court retaining jurisdiction over any disputes that may arise under this Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the Parties' negotiated Consent Judgment described above, as the Court may deem necessary or advisable, until entry of stipulated dismissal of the Lawsuit upon notification to the Court that Defendant timely completed the payment plan without uncured default or entry of the Consent Judgment if Defendant fails to do so.

Respectfully submitted,

| | |
|---|---|
| _____/s/Adam C. Gedling_____ | _____/s/Cathryn R. Ensign_____ |
| Matthew J.P. Coffman, Esq. (0085586) | Kenneth M. Haneline (0037017) |
| mcoffman@mcoffmanlegal.com | khaneline@hplaborlaw.com |
| Adam C. Gedling, Esq. (0085256) | Cathryn R. Ensign (0034384) |
| agedling@mcoffmanlegal.com | censign@hplaborlaw.com |
| COFFMAN LEGAL, LLC | HANELINE PRYATEL LAW |
| 1550 Old Henderson Road, Suite 126 | 561 Boston Mills Road, Suite 700 |
| Columbus. OH 43220 | Hudson, OH 44236 |
| 614-949-1181 (p) | 234-284-2820 (p) |
| 614-386-9964 (f) | 234-284-2819 (f) |
| | |
| Counsel for Plaintiff Wesley Davis, | Counsel for Defendant |
| On behalf of himself and others | Kowalski Heat Treating Co. |
| Similarly situated | |