# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("the Agreement") is entered into by and between Wesley Davis ("Davis") and his heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Representative Plaintiff"), with Representative Plaintiff acting both individually and on behalf of all collective members as defined herein, and Kowalski Heat Treating Co. ("Defendant" or "KHT"). The parties agree as follows:

WHEREAS, on September 22, 2020, Davis filed a lawsuit in the United States District Court for the Northern District of Ohio ("the Court") captioned *Davis v. Kowalski Heat Treating Co.*, Case No. 1:20-cv-2137 (the "Lawsuit"). The Complaint alleged that Defendant (1) violated the Fair Labor Standards Act, 29 U.S.C. § 216 (b), *et seq.* ("FLSA"), by failing to pay overtime wages, (2) violated the Ohio Wage Act, Ohio Rev. Code § 4111.03, by failing to pay overtime wages, (3) violated OPPA, Ohio Rev. Code § 4113.15(A), and (4) The Ohio Wage Act, Ohio Rev. Code § 4111.08 for recordkeeping violations. Davis brought these claims on his own behalf and on behalf of all persons similarly situated.

WHEREAS, The Court on April 2, 2021, granted conditional certification to FLSA collective as:

> All current and former hourly, non-exempt production employees in Defendant's salt bath division who worked 40 or more hours in any workweek and had one or more of the following occur: (1) application of Defendant's meal deduction; (2) performance of pre-shift work; and/or (3) they earned a production bonus, during the three years preceding the filing of this Motion and continuing through the final disposition of this case ("Potential Opt-In Plaintiffs").

WHEREAS, pursuant to the Court's order, collective action notice was issued to the individuals who fell within the conditional certification definition, and a total of five (5) individuals ("Opt-In Plaintiffs") opted-in to the FLSA collective action in addition to Representative Plaintiff, Davis (the Opt-In Plaintiffs and the Representative Plaintiff are referred to collectively herein as "Plaintiffs").

WHEREAS, pursuant to the Notice and the opt-in consents filed with the Court (CM/ECF Nos. 4, 5, 15, 26, and 27), the Opt-In Plaintiffs designated Representative Plaintiff as their agent to make decisions on their behalf concerning the Lawsuit, including with respect to settlement negotiations; stated that:

> I hereby consent, agree and opt-in to be a party Plaintiff in the above collective action. I agree to be represented by the attorneys at Coffman Legal, LLC. I understand that by Filing this consent, I will be bound by any settlement or judgment of the Court on all Issues in this case.

WHEREAS, KHT has denied and continues to deny that it violated any federal or state laws, breached any duty, failed to pay any employees as required by the FLSA or any state law, or engaged in any other unlawful conduct with respect to any of its employees, including, but not limited to, the allegations that Plaintiffs raised, or could have raised, in the Lawsuit.

WHEREAS, a bona fide dispute exists between Plaintiffs and Defendant as to the award, if any, of overtime compensation owed to the Plaintiffs and the overtime hours alleged to have been worked by Plaintiffs.

WHEREAS, the parties engaged in settlement negotiations that were concluded at a mediation conducted by Magistrate Judge David A. Ruiz on July 27, 2021, at which the parties agreed to settlement of this lawsuit. The terms set forth in this Agreement, subject to Court approval, will fully and finally settle, resolve, and conclude the Lawsuit by dismissal with prejudice to be entered upon notification to the Court that Defendant timely completed the payment of the proposed settlement amounts; however, the parties will request that the Court retain jurisdiction over any disputes that may arise under this Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the Parties' Notice of Dismissal, as the Court may deem necessary or advisable.

WHEREAS, with this settlement, the parties desire to avoid incurring further burdens, expenses, and costs of the Lawsuit and seek to resolve, in an amicable fashion, all matters arising out of, or related to, the Lawsuit and any claims that could have been raised by the Plaintiffs arising out of the facts pled in the Lawsuit; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Plaintiffs, and, recognizing the potential risks of continued litigation, including the possibility that Plaintiffs otherwise may not recover anything or may recover an amount less than provided for in this Agreement, Class Counsel has concluded that the terms and conditions of this Agreement are reasonable and fair and the Agreement is in Plaintiffs' best interests.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in the Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

1. **Consideration.** In consideration for Plaintiffs signing this Agreement and agreeing to the promises made herein, including the dismissal with prejudice of Plaintiffs' claims against Defendant in the Lawsuit upon satisfaction of the terms set forth below:

KHT agrees to pay the total amount of Thirty-Nine Thousand Dollars ($39,000.00) which will be divided and paid as follows:

    a.     KHT agrees to pay Coffman Legal, LLC, Plaintiff's class counsel, in the amount of Thirteen Thousand Dollars ($13,000.00) as compensation for Plaintiffs'

attorney's fees, by check made payable to Coffman Legal, LLC and Plaintiffs sent to 1550 Old Henderson Road, Suite 126, Columbus, Ohio 43220. Defendant will issue an appropriate IRS Form 1099 for that amount. Defendant shall have no additional liability for Class Counsel's attorney's fees and costs beyond the amounts defined in Sections 1(b).

b.      KHT agrees to pay Coffman Legal, LLC, Plaintiff's class counsel, in the amount of Four Hundred Twenty-Eight Dollars ($428.00) as reimbursement for all of Plaintiffs' litigation costs and expenses, by check made payable to Coffman Legal, LLC and Plaintiffs sent to 1550 Old Henderson Road, Suite 126, Columbus, Ohio 43220. Defendant will issue an appropriate IRS Form 1099 for that amount.

c.      KHT agrees to pay Plaintiff Wesley Davis Two Thousand Five Hundred Dollars ($2,500.00) as a service payment for Davis' services to the collective group of opt-ins, and as consideration for the general release of claims that Davis will provide under Section 6(a) below. Defendant will issue an IRS Form 1099 to Davis for this amount. In exchange for this service payment, and contingent on Court approval of this service payment, Davis will provide the general release of claims described in Section 6(a) of this Agreement.

d.      The remaining amount of Twenty-Three Thousand Seventy-Two Dollars ($23,072) after attorney fees, costs and service fees as described in Sections 1(a), (b) and (c) above are paid, which shall be known as the Net Fund Value ("NVF") shall be used to pay Plaintiffs.

1.      The NFV will be allocated between all Plaintiffs on a pro rata basis according to their total weeks within the maximum applicable FLSA limitations period on their individual claims, in the amounts set forth below, which amounts were calculated by Plaintiffs' counsel based on information obtained in discovery from Defendant:

i.      Seven Thousand One Hundred Seventy-Nine Dollars and 48/100 ($7,179.48) to Wesley Davis;

ii.      Six Thousand One Hundred Thirty-Four Dollars and 70/100 ($6,134.70) to Galen Bizzell;

iii.      Three Thousand Six Hundred Two Dollars and 23/100 ($3,602.23) to Damaris Cloud.

iv.      One Thousand Three Hundred Ninety-Nine and 56/100 ($1,399.56) to Jacob Kilgore.

v.      Four Thousand Two Hundred Twenty-Four and 56/100 ($4,224.56) to Anthony Richmond and

vi.      Five Hundred Thirty-One and 47/100 ($531.47) to Courtney Burrell.

2.      With regard to each of the payment amounts described in Section 1(d)(1) above, 50% of each payment shall be paid and reported by Defendant under Box #3 of IRS Form 1099 as liquidated damages paid to Plaintiffs, and 50% of each payment shall be paid and reported by Defendant as W-2 back wages paid to Plaintiffs, subject to applicable tax withholdings and deductions. No amount shall revert to Defendant. Defendant is responsible for payment of the employer's share of FICA, FUTA, and other payroll taxes on the wage portion of these payments, separately from and in addition to the Fund.

e.      Neither party nor their counsel makes any representations whatsoever regarding the tax implications of the consideration payments described in this Section 1. In the event that any of the individual Plaintiffs fails to properly pay taxes on the above payments, or in the event that any adverse tax consequences to Defendant arise out of this settlement (other than Defendant's failure to satisfy its obligation to pay employer's share of payroll taxes), such individual Plaintiff shall indemnify and reimburse Defendant for any resulting tax liability, penalties, and/or interest that Defendant is required to pay as a result of such individual Plaintiff's failure to satisfy such individual Plaintiff's tax obligation.

f.      Payment will be made by KHT within Thirty (30) days following the approval by the Court.

g.      KHT will send the settlement payments to Class Counsel, who will administer distribution of the settlement checks to Plaintiffs.

2.      **Consent Judgment in the Event of Default by Defendant in Making Payments.**

In the event of any default by Defendant in the payment of any payments described in Paragraph 1 (whether by failure to timely make the payments or in the event any check or deposit is unable to be redeemed by Plaintiffs or Class Counsel due to insufficient funds), Plaintiffs shall provide Defendant's attorney written notice of the default. This notice shall be made to Cathryn Ensign, Haneline Pryatel Law at censign@hplaborlaw.com.  Upon notice of default, Defendant shall have thirty (30) calendar days from the date of the notice to cure the default, including making any additional payments that are then due. If Defendant fails to cure the default within thirty (30) calendar days of receipt of the written notice by Defendant's attorney, a Consent Judgment shall enter and may be entered immediately upon the expiration of the thirty (30) day period to cure against Defendant in the amount of $39,000.00, less the amount of any payment already paid. In the event of entry of the Consent Judgment, any payments or recovery on amounts owed under the Consent Judgment shall be allocated and paid in the same pro rata percentages of the Consent Judgment amount as Section 1 allocated for each item of compensation as a percentage of the Fund amount that remained after reimbursement of costs and expenses in Section 1(f)(1).

**3.**     **No Consideration Absent Execution of this Agreement.**  Plaintiffs understand and agree that (other than by succeeding at trial) Plaintiffs would not receive the monies and/or benefits specified in Section 1 above, except for Plaintiffs' execution of this Agreement and except for Plaintiffs' agreement to the promises contained herein that pertain to Plaintiffs.

**4.**     **Authority to Act.**  Each person executing this Agreement, including execution on behalf of the corporate entity, warrants and represents that such person has the authority to do so. Representative Plaintiff represents and warrants that he has full authority to enter into this Agreement on behalf of Plaintiffs and to bind them to all of its terms and conditions pursuant to the authority delegated to Representative Plaintiff under the Court-authorized Notice and each Plaintiffs' signed Consent.

**5.**     **Motion for Approval of Settlement.**  The parties shall submit a Joint Motion for Approval of Settlement ("Approval Motion") by September 10, 2021 which shall include a proposed order (1) approving the settlement as fair, adequate, and reasonable, (2) approving the service payments, (3) approving the attorney's fees and costs award, and (4) requesting administrative closure during the payment plan period and that stipulated dismissal of the Lawsuit be entered upon Plaintiffs' notification to the Court that Defendant timely comply with the payment plan without uncured default, or entry of the Consent Judgment upon Plaintiffs' notification to the Court that Defendant did not timely comply with the payment plan without uncured default; however, during the administrative closure period, the parties will request that the Court retain jurisdiction over any disputes that may arise under this Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the dismissal with prejudice or entry of the Parties' negotiated Consent Judgment as applicable, as the Court may deem necessary or advisable.

If the Court does not approve any part of the attorney's fees/cost payment described in Sections 1(a) and 1(b) or service payment described in 1(c) above, the remainder of the settlement remains valid and enforceable subject to all available appellate rights relating to Plaintiffs' attorney's fees/costs application. Both parties agree not to appeal the enforceability of the remainder of the settlement agreement regardless of the Court's approval or non-approval of the attorney's fee/cost award. Any amount of the requested service payments, attorney's fees and costs payment not approved by the Court will be re-allocated pro rata to the NFV.

**6.**     **Releases of Claims; Claims Not Released; and Related Provisions.**

a.     **Representative Plaintiff's General Release of All Claims.**  In exchange for the service payment described in Section 1(c) above and contingent upon Court approval of a service payment, Wesley Davis knowingly and voluntarily releases and forever discharges Defendant and all of its current and former partially- or wholly-owned affiliates, subsidiaries, divisions, predecessors, members, insurers, successors, owners, and assigns, and their current and former owners, employees, members, managers, attorneys, officers, directors, representatives, shareholders, investors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (all entities or individuals described in this Section 5(a) collectively referred to throughout this Agreement as "Released Parties"), of and from any and all claims and liabilities, known and unknown, asserted or unasserted, which Davis collectively or individually, has or may have against any of the

Released Parties as of the date of execution of this Agreement related in any way to his employment to the fullest extent permitted by law, including but not limited to any alleged violation of:

- the Age Discrimination in Employment Act of 1967, as amended;

- the Older Workers' Benefits Protection Act, as amended;

- the Fair Labor Standards Act, as amended;

- Title VII of the Civil Rights Act of 1964, as amended;

- the Family and Medical Leave Act, as amended;

- the Americans with Disabilities Act of 1990, as amended;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (as modified below);

- the Immigration Reform and Control Act, as amended;

- the Worker Adjustment and Retraining Notification Act, as amended;

- the Fair Credit Reporting Act, as amended;

- the Equal Pay Act, as amended;

- the Genetic Information Nondiscrimination Act of 2008, as amended;

- the Ohio Fair Employment Practice Law, Ohio Rev. Code § 4112.01, *et seq.*, including but not limited to Ohio Rev. Code §§ 4112.02, 4112.99, and 4112.14;

- the Ohio Whistleblower Protection Law, Ohio Rev. Code § 4113.51, *et seq.*;

- the Ohio statutory provisions regarding retaliation/discrimination for filing a workers' compensation claim, Ohio Rev. Code § 4123.90;

- the Ohio Equal Pay law, Ohio Rev. Code § 4111.17, *et seq.*;

- the Ohio state wage payment and work hour laws, including but not limited to Ohio Rev. Code § 4111.01, et seq.;

- the Ohio Uniformed Services Employment and Reemployment Act, Ohio Rev. Code § 5903.02;

- contractual or promissory estoppel claims;

- any other federal, state, or local law, statute, rule, regulation, or ordinance;

- any public policy, contract, tort, promissory estoppel, or common law; and/or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

7. **Opt-In Plaintiffs' Release of Claims.** In exchange for the consideration provided for herein (other than the service payments described in Sections 1(a) above), the Plaintiffs knowingly and voluntarily release and forever discharge Defendant and all of its current and former partially- or wholly-owned affiliates, subsidiaries, divisions, predecessors, members, insurers, successors, owners, and assigns, and their current and former owners, employees, members, managers, attorneys, officers, directors, representatives, shareholders, investors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (all entities or individuals described in this Section 5(b) collectively referred to throughout this Agreement as "Released Parties"), of and from all claims pled in the Complaint in the Lawsuit (that is, (1) unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (2) unpaid overtime wages pursuant to the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03, and (3) unpaid overtime pursuant to the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15) and any state, federal, or local claims that could have been asserted in the Complaint based on the facts alleged in the Complaint.

8 **Governmental Agencies.** Nothing in this Agreement prohibits or prevents any of the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission and the National Labor Relations Board. However, to the maximum extent permitted by law, Plaintiffs agree that if such an administrative claim is made based on the facts alleged in the Complaint, Plaintiffs shall not be entitled to recover any individual monetary relief or other individual remedies.

9. **Defendant's Release of Claims.** Defendant knowingly, voluntarily, and unconditionally releases and forever discharges Plaintiffs of and from any and all claims Defendant may have against Plaintiffs arising out of Plaintiffs' participation in the Lawsuit or this settlement. Defendant waives any recoupment or offset-type claims against Plaintiffs arising out of or related to the facts pled in the Complaint in the Lawsuit.

10. **No Preclusive Effect.** The parties explicitly agree that the assertion and release of the claims released in this Agreement shall have no collateral estoppel, claim splitting, res judicata, waiver, or other claim preclusion effect as to claims not explicitly released herein.

11.  **Neutral Reference.** In exchange for the consideration payments described herein, Defendant agrees to provide neutral employment references in response to employment inquiries regarding Plaintiffs. Defendant will not disclose to any prospective employers that Plaintiffs participated in the Lawsuit or otherwise indicate that they are ineligible for rehire.

12.  **No Press Release.** No press releases will be issued to the reporting media regarding the settlement by either party. However, this limited prohibition does not prevent the parties from reasonably responding to unsolicited inquiries from the press in a manner consistent with the publicly filed documents in the Lawsuit.

13.  **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of Ohio without regard to its conflict of laws provisions.  In the event of a breach of any provision of this Agreement, any Party may institute an action specifically to enforce any term or terms of this Agreement and/or seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction such that it cannot be modified to be enforceable, excluding the general release, such provisions shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

14.  **Medicare Disclosure.** Representative Plaintiff affirms that as of the date the Representative Plaintiff signs this Agreement, the Representative Plaintiff is not Medicare eligible (i.e., are not 65 years of age or older; are not suffering from end stage renal failure; have not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services and/or any related agency representing Medicare's interests ("CMS") determine that Medicare has an interest in the payment to the Representative Plaintiffs under this settlement, the Representative Plaintiff agrees to indemnify, defend, and hold Defendant and any the other Released Parties harmless from any action by CMS relating to medical expenses of the Representative Plaintiff. The Representative Plaintiff agrees to reasonably cooperate with Defendant and the Released Parties upon request with respect to any claim that CMS may make and for which the Representative Plaintiff is required to indemnify Defendant and any Released Parties under this Section 10. Further, the Representative Plaintiff agrees to waive any and all future actions against Defendant and any Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

15.  **Section Headings.** The section headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

16.  **Construction.** In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it but shall be construed as if all Parties prepared it jointly.

17.  **Non admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any

time for any purpose as an admission by KHT or the other Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

18.   **Amendment.**  This Agreement may not be modified, altered, or changed except in writing and signed by the Parties wherein specific reference is made to this Agreement.

19.   **Disputes.** If any disputes arise out of the finalization of the settlement documents or the settlement itself, the Parties agree to work in good faith to attempt to resolve those disputes in favor of compromise resulting in an approved agreement. The Parties will first attempt to resolve any such disputes by good faith communication and negotiation between counsel, and if not resolved, will then work in good faith to be resolved by the mediator by way of expedited telephonic or emailed mediation communications.

20.   **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiffs acknowledge that Plaintiffs have not relied on any representations, promises, or agreements of any kind made to Plaintiffs in connection with the decision to accept this Agreement, except for those set forth in this Agreement.

21.   **Execution, Signatories, and Counterparts**. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument. Execution by facsimile, electronic signature, or signed .pdf delivered by email shall be deemed effective as if executed in original.
The Parties knowingly and voluntarily sign this Settlement Agreement and General Release as of the date(s) set forth below:


WESLEY DAVIS, ON BEHALF OF                      KOWALSKI HEAT TREATING CO.
HIMSELF AND THE OPT-IN PLAINTIFFS:

*Wesley d Davis* (Aug 5, 2021 18:05 EDT)

_____               _____
Wesley Davis                                    Stephen Kowalski

**Wesley d Davis**
_____               _____
Printed Name                                    Printed Name

**Aug 5, 2021**

_____               _____
Date                                            Date

time for any purpose as an admission by KHT or the other Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

18.     **Amendment**.  This Agreement may not be modified, altered, or changed except in writing and signed by the Parties wherein specific reference is made to this Agreement.

19.     **Disputes.** If any disputes arise out of the finalization of the settlement documents or the settlement itself, the Parties agree to work in good faith to attempt to resolve those disputes in favor of compromise resulting in an approved agreement. The Parties will first attempt to resolve any such disputes by good faith communication and negotiation between counsel, and if not resolved, will then work in good faith to be resolved by the mediator by way of expedited telephonic or emailed mediation communications.

20.     **Entire Agreement**.  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiffs acknowledge that Plaintiffs have not relied on any representations, promises, or agreements of any kind made to Plaintiffs in connection with the decision to accept this Agreement, except for those set forth in this Agreement.

21.     **Execution, Signatories, and Counterparts**. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument. Execution by facsimile, electronic signature, or signed .pdf delivered by email shall be deemed effective as if executed in original. The Parties knowingly and voluntarily sign this Settlement Agreement and General Release as of the date(s) set forth below:

WESLEY DAVIS, ON BEHALF OF                     KOWALSKI HEAT TREATING CO.
HIMSELF AND THE OPT-IN PLAINTIFFS:

_____              _____
Wesley Davis                                  Stephen Kowalski

_____              _____
Printed Name                                  Printed Name

_____              _____
Date                                          Date